The HERALD COMPANY, a New York corporation, Plaintiff,

v.

Helen G. BONFILS, also known as Helen Bonfils, also known as Helen B. Davis; Palmer Hoyt; and Helen G. Bonfils, Charles R. Buxton, Stephen H. Hart, Palmer Hoyt, Warren K. Young, Joe W. Bruce, Barry Morrison, and Isadore M. Rosenblatt, as trustees of the Denver Post Employees Stock Trust; and the Denver Post, Inc., a Colorado corporation, Defendants.

No. C–1000.

United States District Court, D. Colorado.

Aug. 8, 1970.

---

vich and Lester L. Ward, Predovich & Ward, Pueblo, Colo., for defendants Bonfils and Hoyt.

Jay H. Topkis, Paul Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendants Trustees of the Denver Post Employees Stock Trust.

William C. McClearn and Edwin S. Kahn, Holland & Hart, Denver, Colo., for defendant Denver Post, Inc.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge (assigned).

This is a derivative action brought by a minority stockholder of the Denver Post. Various claims, counterclaims and parties have been dismissed, but on the core issue the Court has found that defendant directors in control of the Post misused substantial corporate assets in acquiring for the corporation at an inflated "control" price a large and crucial block of "Children's Hospital Stock" and caused the Denver Post Employees Stock Trust to be organized and operated for the primary purpose of perpetuating control of the corporation in the incumbent group and their successors as determined by them.

Following the completion of the trial detailed oral findings of fact and conclusions of law were made in open court. A transcript (Volume VI of the trial transcript) was later signed and entered as the Court's written Findings of Fact and Conclusions of Law pursuant to Rule 52, F.R.Civ.P., a procedure utilized, inter alios, in United States v. Morton Salt Company, No. C 38–55 (D. Utah 1955), aff'd, 235 F.2d 573 (10th Cir. 1956) and Monsanto Chemical Co. v. Miller, No. C 195–56 (D. Utah 1956), 118 U.S.P.Q. (1958). Opportunity was afforded counsel for submission of suggestions for amendments, and various clerical and some limited amendments of substance were thereupon approved and interlined on the original transcript subscribed by the Court as aforesaid. These now constitute the considered find-

Fred E. Neef, Robert Swanson, and Allan B. Adams, Neef, Swanson & Meyer, Denver, Colo., for plaintiff.

William H. Erickson, Erickson & Littell, Denver, Colo., and Walter J. Predo-

ings of fact on the basis of which the case will be concluded at this level.

The findings are extensive and comprehensive. They are largely a summary, synthesis and organization in one place of a great body of significant background facts and circumstances developed by counsel in pretrial proceedings and ultimately accepted without substantial dispute, together with limited but crucial findings of the Court on disputed issues. These informal and contemporary reflections of the reasons for inferences and conclusions are designed to reveal without reservation or equivocation to counsel, their clients, and any reviewing court the strengths or weaknesses of the factual structure upon which my conclusions ultimately must rest.

As indicated therein, the conclusions of law announced at the close of the trial and subscribed as such (pp. 857–79 of transcript) were tentative, particularly as they related to remedy. Counsel submitted additional memoranda and proposals with respect to the conclusions as to remedy and form of judgment, a further hearing was held, supplemental conclusions of the Court announced, and revised proposals now have been submitted in view thereof. The Court also indicated it would make supplemental findings on the question of remedies and their foundations to the extent deemed proper and essential.

Now being fully advised, the Court hereby supplements, amends and modifies findings of fact and conclusions of law heretofore announced and entered in the following respects, in all others the findings and conclusions heretofore entered to remain in force and effect.

The Court further finds:

1. Subsequent to October 23, 1969, the Denver Post has paid at the instance of its directors the following additional legal fees and expenses of this action:

| | | |
|---|---|---|
| (a) for the Stock Trustees | | $40,161.10 |
| (b) for the Denver Post | | 60,832.92 |
| Total | | $100,994.02 |

2. The incumbent group throughout this proceeding has attempted to sustain what the Court has found to be an unlawful plan, namely, a plan to lock the incumbent group in control through the purchase of corporate stock with corporate funds, utilizing the Denver Post Stock Plan and the Employees Stock Trust to accomplish their plan for control. The Court has granted and is granting relief concerning the plan and concerning excessive salaries, as sought by the plaintiff. However, the Court has found against the plaintiff on the issues of interest (Second Claim), claimed wrongful use of money loaned (Fourth Claim), cumulative voting (Sixth Claim), and legal fees paid in another proceeding (Seventh Claim).

3. Considering all the facts and circumstances (including the fact that the directors and officers involved have only been partially vindicated, and even then as to matters of less significance than as to which they have been found liable for misconduct), it is reasonable and proper that the defendant directors be required to pay 80% of their own fees and expenses in defending this action.

4. The Denver Post likewise had some interest in supplying counsel to the Denver Post Employees Stock Trust Trustees. Relief was sought as to the Trustees only in relation to the Second Claim which sought the return to the corporation of all the stock transferred from the Post Treasury to the Stock Trust. The Court is ordering a retransfer to the treasury of some shares and permitting the Stock Trust to retain some, while surcharging the defendants Bonfils and Hoyt for the difference between the Post's cost of acquisition and the price at which the shares were purchased by the Stock Trust. The Stock Trust Trustees also sought to sustain authorization to continue to purchase treasury shares from the corporation at less than the Post paid for them. Under all the circumstances the Court finds a division of fees and expenses of the Stock Trustees incurred herein between the Denver Post and the individ-

ual defendants who caused the Post to pay such fees necessary. The individual defendants Bonfils and Hoyt should reimburse the corporation for 80% of the fees and expenses paid by it on behalf of the Stock Trust Trustees.

5. The Denver Post also had an interest in defending the action to some extent, particularly in connection with attempting to defeat the plaintiff's attempt to restore cumulative voting to its charter. In most other respects, however, it should have assumed an air of neutrality and appeared only nominally. But the corporation, at the instance of its three directors, two of whom are defendants herein, proceeded to vigorously defend the entire action, primarily on behalf of these individual defendants. It is found, therefore, that the individual defendants should reimburse the corporation for 80% of the fees and expenses paid by the corporation to its counsel herein.

6. Plaintiff has been represented by attorneys preliminary to and during this litigation. Considerable time and expense have been expended in this action for the benefit of the plaintiff corporation, all of which were necessary and productive in protecting and advancing the interests of the corporation.

7. The parties have agreed that the question of attorneys' fees should be decided on the basis of an affidavit now on file and all of the other facts shown of record. Considering these and in view of the amount of probable realization to the corporation, the time fairly required of counsel upon the case, the skill and diligence employed by them, the complexities and difficulties encountered, the prevailing rate of compensation generally recognized in federal courts in this area, the probable benefits accruing to the corporation from the suit beyond the recovery of monetary recompense, and all other circumstances of the case as revealed by the evidence, a reasonable fee to be awarded counsel herein is found to be the sum of $300,000.

8. In order to equitably and reasonably reimburse the corporation, and as an element of damage, the defendant directors should be required to pay interest on the excessive salary payments found herein from the time of such payments until reimbursed.

The Court concludes:

1. The applicable statute (Chap. 31, Art. 2, Sec. 1(15), 1963 C.R.S.) permits a corporation to indemnify its officers and directors as against expenses incurred by them in connection with the defense of an action to which they are made parties by reason of having been such officer or director except in relation to matters as to which they shall be adjudged in such action to be liable for negligence or misconduct in the performance of duty. The statute permits a division of fees where a director or officer is not completely vindicated.

2. The affirmative defenses of laches, acquiescence, waiver, ratification, estoppel and unclean hands on the part of a plaintiff stockholder ordinarily may not be asserted against the corporation in a stockholder's derivative suit. Similarly, where an action is brought on the right of a corporation to recover money for property wrongfully transferred from its treasury, the corporation itself has no standing to urge that plaintiff was guilty of laches.

3. It is now believed that the Court was in error in its tentative conclusion that there should be a significant limitation of relief to the corporation by reason of the failure of the minority stockholder, Newhouse, to act timely against the corporate mismanagement of the incumbent group. In recognizing such failure the Court must also recognize and give effect to a more significant failure, which was a continuing one and with complete rather than partial knowledge, on the part of the incumbent group. Beyond this, it would not be right to isolate the problems by relating them entirely to an incumbent group on one hand and a single minority stockholder on the other, as there is also involved, and more determinatively in a suit such as this, the interests of the corporation as

such. Neither is it completely realistic to say that all of the other stockholders were willing to go along with the incumbent group. Their willingness could stem from various reasons, including lack of knowledge of the extent of corporate abuse. Some of the stockholders were trustees of beneficial interests. In addition, public interests were involved. Thus, any estoppel, limitations or laches would be applied if at all not only against the principal minority stockholder, but against the corporation, the beneficiaries of trusts and the public. But consistent with the award of appropriate remedies to the corporation, the Court should be sensitive to other equitable considerations for the protection of innocent persons caught in the crossfire of this action.

4. No principle of laches, limitations, estoppel or unclean hands on the part of a plaintiff stockholder in this derivative action should limit or bar corporate relief as against officers and directors who at all times have remained in domination and control, who have formed and carried out, through mismanagement and concealment, a plan to gain, maintain and perpetuate themselves in voting control through the use of corporate funds, and where the plan continues to operate to inflict damage. Particularly is this the case where one of the stockholders is a trust whose terminal beneficiary is a charitable foundation, where the trustees of the trust and the dominant trustees of the Foundation acted in concert with the recreant directors and aided in carrying out the plan to gain, maintain and perpetuate control.

5. The defendants have not sustained their contention that they and third parties have so materially changed their position in reliance upon plaintiff's failure to institute this action at an earlier date that the relief hereinafter authorized should be barred. Appropriate relief to the corporation can be granted without causing injury or injustice to any innocent third party. The harm inflicted upon the corporation by the defendants can be undone, and the corporation can be reasonably restored to the position it would have been in had the defendants not carried out their unlawful plan only by granting the relief referred to hereinafter.

6. In order to equitably and reasonably reimburse the corporation, and as an element of damage, the defendant directors should be required to pay interest on the excessive salary payments found herein from the times of such payments until the corporation has been reimbursed.

7. The following principles of law, among others, are believed to be controlling in this case, and any relief should be in harmony therewith.

(a) A commercial corporation in general has as its primary and ultimate objective the making of profit for its stockholders.

(b) The law may assume that stockholders and particularly minority stockholders do not become such merely out of altruism or loyalty to tradition, but to make a profit.

(c) The latter is not a dishonorable motive or one which the law disfavors.

(d) Officers and directors of a corporation are fiduciaries as to its stockholders and owe all stockholders the obligation of good faith, candor, forthrightness and fairness.

(e) Within the limits and scope of this fiduciary duty, directors and officers have the power, the duty and the discretion to exercise their best judgment when making business decisions for corporate purposes, and such decisions are primarily matters for the judgment of such officers and directors, or the stockholders in exercise of their stockholder powers, and not the court. It is only under special circumstances that the court scrutinizes these decisions.

(f) Neither the achievement or perpetuation of control by a majority or any group of stockholders nor the freezing out or imposition upon minority stockholders is within legitimate corpo-

rate purposes to the extent of authorizing utilization of corporate resources and powers for that purpose.

(g) Management must be just, lawful and fair before it is generous. It is not a legitimate corporate activity to give away the resources of the corporation, no matter how worthy or needy the donee may be, nor is it permissible by payment of excessive salaries or allowances to divert funds from stockholders to officers or directors, without lawful reason.

(h) There is a distinction between using one's own resources for charitable projects or for proxy or control contests and using the resources of the corporation for those purposes. The law does not permit the use or diversion of corporate funds for purely personal purposes, no matter what form that diversion may take.

(i) Self-dealing by officers, directors or others in control of a corporation will be carefully scrutinized by a court of equity, and practices which might otherwise be legitimate or justifiable in the utilization of personal resources may not survive that scrutiny when a primary motive is self-interest and not corporate interest.

(j) Equity favors the vigilant and not those who slumber upon their rights or knowledgeably seek to capitalize at the expense of others by delay.

(k) Equity will not reward mere manipulation either by majority or minority corporate control or participation.

(l) Equity seeks to balance the equities, and while it will endeavor to do complete justice without stint, it will not overcorrect, limiting relief to that which is essential and appropriate in view of all the circumstances.

(m) Since management, backed by majority stock control, has a wide discretion in making business judgments, the Court will hospitably accept those business judgments when made with an eye single to the interest of the corporation, unless manifestly unlawful. But when self-interest or improper motives, inconsistent with legitimate corporate purposes or basic principles on which corporations must operate, are indicated the Court again has a duty to carefully scrutinize action to determine whether it was within the perimeter of permissible action.

(n) It is not proper for management to use corporate resources to retain control and eliminate the possibility of a control antagonistic to that of incumbents.

(o) Merely because the ends are legitimate management may not at corporate expense take any means to that end which it considers proper, particularly when considerations of self-perpetuation intervene as a dominant motive.

8. In view of all of the circumstances found in this case, the corporation, upon the suit of the plaintiff, is entitled to a remedy beyond the mere prevention of the sale of the stock in question to the Stock Trust at less than its reasonable sale value and beyond application of surcharges to compensate for past losses leaving the stock so acquired to remain with the corporation in partial accomplishment of the improper purpose of its acquisition. In implementation of the foregoing principles and to reasonably, equitably and appropriately rectify and correct the wrongs herein found the Court's judgment and decree should include substantially the following provisions:

## I.

The 14,557.5475 shares of Denver Post capital stock now retained in the treasury of said corporation and acquired by it from the Children's Hospital Association shall be sold at public auction as provided in Part IV hereof.

## II.

A. The defendant Trustees of the Denver Post Employees Stock Trust are hereby ordered to retransfer and reassign back to the Denver Post Corpora-

tion 775.7 shares of Denver Post stock, which amount constitutes the number of shares of former Children's Hospital stock transferred to the Employees Stock Trust subsequent to May 2, 1968, when the corporation and the Trustees were given formal notice of plaintiff's challenge to the validity of such transfer.

B. Upon receipt of said shares the Denver Post Corporation shall reimburse the Employees Stock Trust therefor at the price at which said shares were transferred to the Employees Stock Trust.

C. The 775.7 shares of Denver Post stock so reacquired from the Employees Stock Trust shall be sold at public auction as provided in Part IV hereof.

### III.

A. The defendant Trustees of the Denver Post Employees Stock Trust are hereby ordered to retransfer and reassign back to the Denver Post Corporation 219 shares of Denver Post stock, which amount constitutes the number of shares of former Children's Hospital stock sold and issued to the Employees Stock Trust prior to May 2, 1968, and represent Trust Certificates held by Palmer Hoyt (73 shares), Charles R. Buxton (73 shares) and Warren K. Young (73 shares).

B. Upon receipt of said shares, the Denver Post Corporation shall reimburse the Employees Stock Trust therefor at the price at which said shares were purchased.

C. The 219 shares of Denver Post stock so reacquired from the Employees Stock Trust shall be sold at public auction as provided in Part IV hereof.

### IV.

A. All of said shares to be sold at public auction pursuant to Parts I, II and III hereof, shall be sold as a single block to the highest bidder by the Clerk of the Court at an auction to be held at the time specified in the judgment or at any extension of that date which the court

for cause may grant. Any registration of said shares or other clearance required by law shall be promptly accomplished by and at the expense of the defendant corporation.

B. A notice of sale to be specified in the judgment herein shall be published in the Denver Post, the Wall Street Journal, and Editor and Publisher as specified in the judgment in which shall also be specified the conditions of sale. The Denver Post through its directors and officers shall furnish to any and all prospective bidders its certified balance sheet and profit and loss statement for the latest accounting period then available and such similar statements, unaudited, as may be available for later periods, together with a copy of any prospectus or other statement required by the Securities Exchange Commission.

C. The Clerk shall not accept any bid for less than $6,429,299.12, and any acceptance will be subject to the further approval and confirmation of the Court upon being satisfied that the purchaser is qualified and the transaction lawful.

D. In the event that no bid in excess of $6,429,299.12 is received and approved and confirmed by the Court, the Court retains jurisdiction for the purpose of entering further orders with respect to the disposition of said shares or the entering of additional surcharge judgments, or both.

E. In the event the said shares shall ultimately sell for less than $6,429,299.-12, this Court retains jurisdiction for the purpose of imposing a surcharge judgment on the defendants Bonfils and Hoyt for the difference between the price at which said shares shall be sold and the composite price of $6,429,299.12; provided, however, that said surcharge judgment against said defendants shall in no event exceed $3,124,818.39.

### V.

A. Defendants Bonfils and Hoyt have a liability to the Denver Post Corporation in the amount of $321,967.15 with respect to 2419.4 shares of former Chil-

dren's Hospital stock, which shares—having been transferred to the Employees Stock Trust prior to May 2, 1968, and not being represented by Trust Certificates held by Palmer Hoyt, Charles R. Buxton and Warren K. Young—are to remain therein (said $321,967.15 being comprised of the following components: (a) the difference between the total amount of the acquisition cost of said shares and the total amount of the price received for said shares upon their transfer to the Employees Stock Trust, such difference being further offset by the value of the initial 1600 share contribution of defendant Bonfils; and (b) interest, at the rate of 6% per annum, on the total amount of the acquisition cost of said shares, to be measured from the date of said acquisition to the date hereof with proper discount in calculating said interest for the reduction in the base amount by virtue of the transfer of said shares to the Employees Stock Trust and the initial 1600 share contribution of the defendant Bonfils). Defendants Bonfils and Hoyt are surcharged in the amount of $321,967.15, and judgment should be entered by this court against defendants Bonfils and Hoyt in said amount.

## VI.

A. That judgment be entered in favor of the Denver Post Corporation against the defendants Bonfils and Hoyt in their personal capacities on account of the excessive salary payments made to Miss Bonfils by the corporation in the amount of $80,479.46, plus interest at the rate of 6% per annum to date of judgment.

B. That judgment be entered in favor of the Denver Post against the defendants Bonfils and Hoyt in their personal capacities for the excessive salary payments made to Donald R. Seawell in the amount of $23,698.63, with interest thereon at the rate of 6% per annum to date of judgment.

## VII.

That judgment be entered in favor of the Denver Post against the defendants Bonfils and Hoyt (individually) for the sum of $188,193.54, representing 80% of the fees and expenses paid by the Denver Post for: (a) the representation of the defendants Bonfils and Hoyt in this action, $27,123.36; (b) the representation of the corporation in this action, $111,760.03; and (c) for the representation of the defendant Trustees of the Denver Post Employees Stock Trust, $96,358.54 —or a total of $235,241.93.

## VIII.

That judgment be entered in favor of plaintiff for the reasonable fees and expenses of its attorneys in consideration for the services rendered to, and the benefits thereby conferred upon the Denver Post Corporation in the amount of $300,000, and that said amount be paid over by the Denver Post to plaintiff and plaintiff's attorneys. Such payment shall be considered to be in full for services to the date of the order and judgment. In the event this matter is appealed and the judgment of this court upheld, the Court reserves jurisdiction to consider awarding further fees and expenses if such are not considered or awarded by the appellate court.

## IX.

The Court shall retain jurisdiction to implement the foregoing provisions and to enter supplemental surcharge judgments should sale of said stock as directed not be confirmed by the court.

Counsel for plaintiff are directed to prepare, serve upon opposing counsel and lodge with the court within fifteen days a form of judgment in harmony with the foregoing conclusions of law. Any approval as to form by opposing counsel consistent with the foregoing conclusions of law to further assure to the extent possible the practicality of provision and timing of sale will be welcome and will not be taken as a waiver of any position heretofore taken by any party.